Filed 8/30/21  P. v. Blocker CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B309642 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA018677) |
| v. | |
| LINNETTE O. BLOCKER, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Nicole C. Bershon, Judge.  Affirmed.

Robert D. Bacon, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michael R. Johnsen and David W. Williams, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant and appellant Linnette O. Blocker challenges the trial court's denial of her petition under Penal Code[1] section 1170.95 for resentencing on her murder conviction. She argues that the trial court erred by applying an incorrect standard of proof and by finding after an evidentiary hearing that she was a major participant in the underlying burglary that was the basis of her felony-murder conviction. We disagree and affirm on two grounds. First, the jury in Blocker's trial found true a felony-murder special circumstance, making her ineligible for relief as a matter of law. Second, even assuming that the special circumstance finding did not disqualify her, there was substantial evidence to support the trial court's rejection of her petition after a final eligibility hearing.

## FACTUAL AND PROCEDURAL SUMMARY

In 1994, Blocker took part in a burglary in which one of her cohorts killed a victim, and another cohort attempted to kill a second victim. A jury convicted her of one count of murder (§ 187, subd. (a)), one count of attempted murder (§§ 187, 664), one count of residential burglary (§ 459), and one count of felony child abuse (former § 273a, subd. (a)(1)). On the murder count, the jury found true a felony-murder special circumstance allegation. (§ 190.2, subd. (a)(17).) The trial court sentenced Blocker to life in prison without the possibility of parole, plus an additional 10 years 4 months. We affirmed the convictions in Blocker's direct appeal. (*People v. Blocker* (Oct. 2, 1996, B099624) [nonpub. opn.].)

---

[1] Subsequent statutory references are to the Penal Code.

In our prior opinion, we described the facts of the case as follows: "T[airree] Lynne West (West) lived in a small apartment in El Segundo with her infant daughter, Carlie, and with 12-year-old Ashley L[.], whom West was adopting. Erica Olsen (Olsen) had lived with West for approximately two months. She left at West's request in late November or early December 1993. Olsen had a key to the apartment. While Olsen was living with West, her boyfriend, Robert Foster (Foster), occasionally visited and spent the night.

"Foster and Olsen were living in room 401 of the Hollywood YMCA in early February 1995. Marcus Brewington (Brewington) lived in room 414. At approximately 2:30 p.m. on February 8, 1994, Foster asked the YMCA residence director for permission to bring a visitor to his room to discuss business. The director gave permission, after which Foster and Olsen walked toward the rooms with [Blocker]. The desk supervisor saw these three and Brewington leave the YMCA later that night; they walked toward the bus stop. Their demeanor appeared to be uncharacteristically serious; they were all wearing dark clothing and bandannas. [Blocker] was wearing gloves.

"West, the baby and Ashley arrived home at approximately midnight on the night of February 8. After Ashley finished her homework, they retired for the night. The baby, Carlie, was ill with bronchitis and therefore was sleeping with her mother.

"Foster, Olsen, Brewington and [Blocker] had taken a bus to West's apartment, arriving at approximately 11:00 p.m. They waited in a nearby park for approximately one hour until West and the children returned home. As they waited, Foster, Olsen and Brewington discussed entering West's apartment to steal her belongings and then killing the family. Foster, who had a

3

butcher knife, said he would break West's neck. Brewington said he would 'take care of the baby.'

"Shortly after they saw West drive up in her Nissan Pulsar and enter the apartment, the quartet left the park and went to the apartment. Foster used Olsen's key to open the door. As the others entered the apartment, Foster went to West's bedroom. He attacked her with the knife, inflicting a number of stab wounds. She also was struck forcefully 15 to 20 times. She died from strangulation.

"Aware that West was struggling for her life, [Blocker] entered the kitchen. Finding Carlie, clad only in a diaper, lying in the sink, she picked her up. [Blocker] carried Carlie to the living room; she placed the baby on the sofa. At this point, [Blocker] saw Brewington wrestling with Ashley. He called to [Blocker] to come and hold down Ashley. [Blocker] did so briefly. When she left the room, Brewington still was struggling with Ashley. According to Ashley, Foster attempted to strangle her, after which Brewington punched her and she passed out.

"As the quartet gathered West's property, they heard Ashley moan. Foster went into Ashley's bedroom briefly. When he emerged, the quartet left with a radio, West's spoon collection, a large number of compact discs, a stereo and West's Nissan Pulsar. They also took a jacket of West's and her pager.

"Ashley regained consciousness some time later. After discovering that her neck was bleeding, she crawled to the telephone and called 911. As she passed West's bedroom, she could see West's legs and a great deal of blood.

"El Segundo Police Officer Louis Kutil found the panic-stricken and terrified Ashley holding a bloody towel to her neck. West was lying on her bed, covered with blood. She had been

4

strangled with a black scarf. There was a broken knife in the bedroom. The living room had been ransacked. Officer Calvin Smith found Carlie lying face down on the living room sofa underneath pillows and towels. She had been gagged with a light blue bandanna; she was extremely cold, pale and tired; her diaper was abnormally saturated.

"Foster, Olsen, Brewington and [Blocker] returned to the YMCA at approximately 2:30 a.m. on February 9, 1994. After cleaning up, they discussed the venture. Foster acknowledged stabbing and choking West. Brewington said he tried to choke Ashley, but she simply would not succumb; Foster went into her room and slashed her throat.

"[Blocker] initially denied knowing anything about the killing. She stated, however, that she spent the entire night with Foster. While talking to [Blocker], Detective Bart Langley noticed a pager hanging from [Blocker's] waistband; the pager was West's. He arrested [Blocker] and Brewington. Shortly thereafter, Foster and Olsen returned to the YMCA in West's automobile. Officer Rudy Kerkoff arrested them. They had pawned most of the property taken from West's apartment.

"**Defense**

"In early February 1994, Thomas Semblower (Semblower) met Foster, Brewington and Olsen at the Teen Canteen. Foster asked Semblower to help with a burglary in El Segundo; he intended to burglarize a place he and Olsen knew. They had a key to the apartment. Semblower's role would be to help restrain the boyfriend; the other participants would be Foster, Brewington, Olsen and [Blocker]. Olsen and [Blocker] would restrain the children. Semblower agreed to participate in the burglary.

5

"Semblower met Foster and the others at the YMCA on the following day to discuss the matter further. Foster took Semblower aside; he said he had changed plans. Rather than restraining the burglary victims, they would kill them. [Blocker] was not present when this conversation took place. Semblower refused to participate under these circumstances." (*People v. Blocker*, *supra*, B099624.)

. . .

In 2018, the Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437), which abolished the natural and probable consequences doctrine in cases of murder, and limited the application of the felony-murder doctrine. (See *People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*).) Under the new law, a conviction for felony murder requires proof that the defendant was either the actual killer, acted with the intent to kill, or "was a major participant in the underlying felony and acted with reckless indifference to human life." (§ 189, subd. (e)(3).) The legislation also enacted section 1170.95, which established a procedure for vacating murder convictions for defendants who could no longer be convicted of murder because of the changes in the law and resentencing those who were so convicted. (Stats. 2018, ch. 1015, § 4, pp. 6675–6677.)

Blocker filed a petition for resentencing on January 7, 2019. The trial court found that Blocker had established a prima facie case for relief, appointed counsel to represent her, and issued an order to show cause why the petition should not be granted. After a hearing on the order to show cause, the trial court found that the prosecution proved beyond a reasonable

doubt that Blocker was ineligible for resentencing and denied the petition.

## DISCUSSION

### A.   *Background on Senate Bill No. 1437*

Senate Bill No. 1437 includes both prospective and retrospective provisions.  Prospectively, the law amended section 188 to provide that "[e]xcept as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime."  (§ 188, subd. (a)(3).)  The effect of this amendment is to "eliminate[ ] natural and probable consequences liability for first and second degree murder."  (*Gentile*, *supra*, 10 Cal.5th at p. 849.)  In addition, Senate Bill No. 1437 enacted section 189, subdivision (e), which restricted felony-murder liability to cases in which the defendant was the actual killer, acted with the intent to kill, or was a major participant in the underlying felony and acted with reckless indifference to human life.  (See *Gentile*, *supra*, at pp. 842–843.)

The retroactive component of Senate Bill No. 1437 is codified in section 1170.95.  (See *Gentile*, *supra*, 10 Cal.5th at p. 853 ["the Legislature intended section 1170.95 to be the exclusive avenue for retroactive relief under Senate Bill [No.] 1437"].)  This section allows a defendant "convicted of felony murder or murder under a natural and probable consequences theory [to] file a petition" for resentencing under the new law.  (§ 1170.95, subd. (a).)  To be eligible for resentencing, a defendant must show that he or she "could not be convicted of first or second degree murder because of changes to Section 188 or 189 made

7

effective" as a part of Senate Bill No. 1437.  (§ 1170.95, subd. (a)(3).)

The first step for a defendant to obtain relief under section 1170.95 is to file a declaration affirming that he or she is eligible for resentencing under the new law.  (See § 1170.95, subd. (b)(1).)  The trial court reviews the petition, and if the petition is incomplete, "the court may deny the petition without prejudice to the filing of another petition and advise the petitioner that the matter cannot be considered without the missing information."  (*Id*., subd. (b)(2).)

If the defendant's petition is facially sufficient, the trial court "shall appoint counsel to represent the petitioner." (§ 1170.95, subd. (c).)  The prosecutor must file a response within 60 days of service of the petition, and the petitioner may file a reply.  (*Ibid.*)  At this stage, the trial court must determine whether the petitioner has made a prima facie case for relief, under a standard of review "analogous" to the "prima facie inquiry in habeas corpus proceedings."  (*People v. Lewis* (2021) 11 Cal.5th 952, 971 (*Lewis*).)  In this review, " ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause." ' [Citations.]  '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citations.]  'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Ibid.*)

As part of its review, the court may consult the record of conviction in the case, including any prior appellate opinions, subject to the caveat that "the probative value of an appellate opinion is case-specific, and 'it is certainly correct that an appellate opinion might not supply all answers.' " (*Lewis*, *supra*, 11 Cal.5th at p. 972.)  The "trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion' ([*People v.*] *Drayton* [(2020)] 47 Cal.App.5th [965,] 980 . . . )" (*Lewis*, *supra*, 11 Cal.5th at p. 972) in recognition of the fact that "the 'prima facie bar was intentionally and correctly set very low.' " (*Ibid.*)

If the trial court determines that the defendant has met this burden, "the court shall issue an order to show cause." (§ 1170.95, subd. (c).)  If the court issues an order to show cause, it must hold a hearing within 60 days to determine whether to vacate the murder conviction.  (§ 1170.95, subd. (d)(1).)  At this final stage of the proceeding, the prosecution has the burden of proving "beyond a reasonable doubt[ ] that the petitioner is ineligible for resentencing."  (*Id.*, subd. (d)(3).)

### B.    *The Trial Court Did Not Err in Denying Blocker's Petition*

In this case, the trial court denied Blocker's petition at the final stage of review, finding beyond a reasonable doubt after a hearing pursuant to section 1170.95, subdivision (d)(1) that Blocker was ineligible for resentencing because she was a major participant in the burglary and acted with reckless indifference to human life.  She contends that the trial court erred by failing to apply the correct standard of proof at the hearing, and by finding that she was a major participant in the burglary.  We disagree, both because the jury's special circumstance finding at

9

Blocker's original trial made her ineligible for resentencing as a matter of law, and because, even if the special circumstance finding did not disqualify her, the trial court did not err in describing the legal standard for deciding her petition or in finding that she was a major participant in the underlying burglary.

### 1. *The jury's felony-murder special circumstance finding renders Blocker ineligible for resentencing as a matter of law*

To be eligible for resentencing, Blocker must show that she "could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective" in Senate Bill No. 1437.  (§ 1170.95, subd. (a)(3).)  As we have described above, Senate Bill No. 1437 amended section 189 to require, in all felony-murder cases, proof that the defendant was the actual killer, acted with the intent to kill, or "was a major participant in the underlying felony and acted with reckless indifference to human life."  (§ 189, subd. (e)(3); see *Gentile*, *supra*, 10 Cal.5th at pp. 842–843.)  These requirements are identical to those for a felony-murder special circumstance.  (See § 190.2, subds. (b)−(d); *People v. Allison* (2020) 55 Cal.App.5th 449, 457 (*Allison*).)  The special circumstance finding thus establishes as a matter of law that Blocker could still be convicted of murder despite the amendments in Senate Bill No. 1437, and that she is ineligible for resentencing.

Blocker disagrees with this conclusion.  She argues that the jury's special circumstance finding does not preclude her from relief under section 1170.95 because, in the years following her conviction, the Supreme Court clarified the definition of major

10

participation and reckless indifference to human life in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*). Because no court has considered whether she was a major participant who acted with reckless indifference under the *Banks/Clark* standard, she contends that the jury's special circumstance finding does not alone render her ineligible for resentencing.

We have considered this argument in three separate published opinions, and on each occasion, we have held that a defendant with a pre-*Banks/Clark* felony-murder special circumstance finding is ineligible for resentencing under section 1170.95, although she may seek review by way of habeas corpus. (See *People v. Galvan* (2020) 52 Cal.App.5th 1134, review granted Oct. 14, 2020, S264284 (*Galvan*), *People v. Murillo* (2020) 54 Cal.App.5th 160, review granted Nov. 18, 2020, S264978 (*Murillo*), and *Allison*, *supra*, 55 Cal.App.5th 449.) We stand by our reasoning in those opinions, and we see no need to repeat them here.

### 2. *Substantial evidence supported the trial court's decision to deny Blocker's petition*

We recognize that other courts have disagreed with our conclusion regarding pre-*Banks/Clark* special-circumstance findings,[2] and that the issue is currently pending before the

---

[2] See *People v. Torres* (2020) 46 Cal.App.5th 1168, review granted June 24, 2020, S262011; *People v. Smith* (2020) 49 Cal.App.5th 85, review granted July 22, 2020, S262835; *People v. York* (2020) 54 Cal.App.5th 250, review granted November 18, 2020, S264954; *People v. Harris* (2021) 60 Cal.App.5th 939, review granted April 28, 2021, S267802; *People v. Secrease* (2021)

11

California Supreme Court. In the interest of judicial economy, we will assume Blocker is correct that the special-circumstance finding does not preclude her from resentencing as a matter of law, and we will consider her arguments against the trial court's decision to deny her petition at the final stage of review.

At the final eligibility hearing, the prosecution must "prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1170.95, subd. (d)(3).) Blocker contends that the trial court erred by implying that the prosecution need show only that there was substantial evidence to support the trial court's conviction. In another prior opinion, *People v. Duke* (2020) 55 Cal.App.5th 113, review granted January 13, 2021, S265309 (*Duke*), we held that the standard of review at the final eligibility hearing is indeed "essentially identical to the standard of substantial evidence." (*Id.* at p. 123.) Thus, if the trial court had applied this standard, it would not have erred.

Once again, however, we recognize that other courts have disagreed with our opinion in *Duke*,[3] and that the issue is

---

63 Cal.App.5th 231, review granted June 30, 2021, S268862; *People v. Pineda* (2021) 66 Cal.App.5th 792; *People v. Gonzalez* (2021) 65 Cal.App.5th 420; *People v. Arias* (2021) 66 Cal.App.5th 987. On the other hand, several other Court of Appeal opinions have agreed with our conclusion, including *People v. Nunez* (2020) 57 Cal.App.5th 78, review granted January 13, 2021, S265918; *People v. Gomez* (2020) 52 Cal.App.5th 1, review granted October 14, 2020, S264033; *People v. Jones* (2020) 56 Cal.App.5th 474, review granted January 27, 2021, S265854; and *People v. Simmons* (2021) 65 Cal.App.5th 739.

[3] See *People v. Lopez* (2020) 56 Cal.App.5th 936, 949–951, review granted February 10, 2021, S265974 (*Lopez*); *People v.*

currently pending before the California Supreme Court. In the interest of judicial economy, we will assume that the substantial evidence standard does not apply, and that instead, " '[i]t is the burden of the prosecution to show, beyond a reasonable doubt, that the petitioner is guilty of murder under the law' " effective following the enactment of Senate Bill No. 1437. (*People v. Lopez*, *supra*, 56 Cal.App.5th at p. 950, review granted.)

Contrary to Blocker's assertion, the trial court did not apply a substantial evidence standard to the review of her petition. Although the court mentioned the substantial evidence standard in a different context earlier in the hearing, when it came time to render a decision, the court did not cite that standard. Instead, the court followed the language of section 1170.95, subdivision (d)(3), and found that "the prosecution has proved beyond a reasonable doubt that the petitioner is ineligible for resentencing." In explaining its decision, the court did not indicate that it was rejecting Blocker's petition because a jury *could* have found her guilty under a still-valid theory. Instead, the court found that the evidence was unequivocal: "I don't think there's a clearer example of a non-gun related . . . major participant, but more importantly reckless indifference to human life," than Blocker's case.

We also disagree with Blocker's contention that, because there was no live testimony or new evidence introduced at the hearing, we should conduct an independent review of the factual

---

*Rodriguez* (2020) 58 Cal.App.5th 227, 240–244, review granted March 10, 2021, S266652; *People v. Clements* (2021) 60 Cal.App.5th 597, 613–618, review granted April 28, 2021, S267624.

findings.  Blocker cites cases in which reviewing courts in other contexts have not deferred to the trial court's factual findings when those findings are based on a purely written record rather than live testimony.  (See, e.g., *People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 79–80; *In re Cox* (2003) 30 Cal.4th 974, 998, fn. 2; *In re Cudjo* (1999) 20 Cal.4th 673, 687–688.)  But these cases are contrary to the general rule of "apply[ing] a deferential standard of review in determining whether the evidence supports any of the superior court's factual findings." (*People v. Rodriguez*, *supra*, 58 Cal.App.5th at p. 238, review granted.)  Substantial evidence review "is not reserved for the review of jury findings; it has been applied to postjudgment orders involving judicial factfinding." (*Lopez*, *supra*, 56 Cal.App.5th at p. 954, review granted.)  Section 1170.95 establishes a multi-stage review process for the trial court to determine a defendant's eligibility.  The statute does not indicate that, when we review the trial court, we should repeat the final stage of that process with no deference to the trial court's findings.  We join the other courts that have considered this question in holding that it applies to the review of final eligibility hearings under section 1170.95 as well.  (See *Lopez*, *supra*, at pp. 953–954; *People v. Clements*, *supra*, 60 Cal.App.5th at p. 618, review granted.)

When reviewing for substantial evidence, " ' "the court 'must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citations.]" ' " (*Lopez*, *supra*, 56 Cal.App.5th at p. 950.)

14

Under this standard, there was substantial evidence to support the trial court's finding that Blocker was a major participant in the burglary.[4] In *Banks*, the Supreme Court set out a series of factors relevant to determining whether a defendant's participation in a felony "was sufficiently significant to be considered 'major.'" (*Banks, supra*, 61 Cal.4th at p. 803.) These factors are: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used?" (*Ibid.*)

Blocker argues that some of these factors point in her favor. She did not plan the burglary, nor did she supply the weapons. She notes that a detective in the case described her as "probably the least culpable of the four defendants." But these factors pale in comparison to other circumstances of the case. This was no "garden-variety [burglary], where death might be possible but not probable." (*Banks, supra*, 61 Cal.4th at p. 802.) Blocker's cohorts planned not merely to steal from West, but also to kill her and anyone else in the apartment. Blocker admitted to police that she overheard her three cohorts discussing this plan beforehand. In cases like *Banks* where a court overturned a finding of major participation, the defendant typically acted as a getaway driver

---

[4] Blocker does not contend that the trial court erred by finding that she acted with reckless indifference to human life.

15

or otherwise was not present at the scene of the killing.  (See *id.* at pp. 804–805.)  In this case, Blocker admitted that she entered the apartment with her cohorts and remained there throughout the burglary.  She admitted that she was nearby when Foster stabbed and strangled West, that she saw him jump on West's bed, and heard them struggle.  She admitted that she assisted Brewington in holding down 12-year-old Ashley while he was struggling with her.

After listing the relevant factors to determining whether a defendant was a major participant, the Supreme Court in *Banks* cautioned that "[n]o one of these considerations is necessary, nor is any one of them necessarily sufficient.  All may be weighed in determining the ultimate question, whether the defendant's participation 'in criminal activities known to carry a grave risk of death (*Tison v. Arizona* [(1987)] 481 U.S. [137,] 157) was sufficiently significant to be considered 'major.' " (*Banks*, *supra*, 61 Cal.4th at p. 803.)  In this case, Blocker's conduct met the requirements for major participation under any standard of review.  The trial court did not err in denying her petition for resentencing.

16

## DISPOSITION

The trial court's order denying the petition for resentencing is affirmed.

NOT TO BE PUBLISHED.



ROTHSCHILD, P. J.

We concur:


CHANEY, J.


CRANDALL, J.*

---

\* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17